**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| KOU SRIMOUNGCHANH, <br> On Behalf of Himself And All Others Similarly <br> Situated, <br>                    Plaintiff, <br><br> v. <br><br> LG PHILIPS LCD CO, LTD., <br> LG PHILIPS LCD AMERICA, INC., <br> SAMSUNG ELECTRONIC CO., LTD. <br> NEC CORPORATION, NEC ELECTRONICS <br> AMERICA, INC., NEC LCD TECHNOLOGIES, <br> LTD., HITACHI LTD, HITACHI DISPLAYS, LTD., <br> HITACHI ELECTRONICS DEVICES (USA), INC., <br> HITACHI AMERICA, LTD., IDT INTERNATIONAL <br> LTD., INTERNATIONAL DISPLAY TECHNOLOGY <br> CO., LTD., INTERNATIONAL DISPLAY <br> TECHNOLOGY USA INC., SANYO EPSON <br> IMAGING DEVICES CORPORATION, SHARP <br> CORPORATION, SHARP ELECTRONICS <br> CORPORATION, TOSHIBA CORPORATION, <br> TOSHIBA MATSUSHITA DISPLAY <br> TECHNOLOGY CO. LTD, AU OPTRONICS CORP., <br> AU OPTRONICS CORPORATION AMERICA, <br> CHI MEI OPTOELECTRONICS, CHI MEI <br> OPTOELECTRONICS USA, INC., CHUNGHWA <br> PICTURE TUBES, LTD., and <br> HANNSTAR DISPLAY CORPORATION, <br><br>                 Defendants. | Civil Action No.  07-2107 JTM <br> Court No. <br><br><br> <u>JURY TRIAL DEMANDED</u> |

## COMPLAINT

    Plaintiff, Kou Srimoungchanh, by and through his attorneys, brings this action for

damages and injunctive relief on behalf of himself and all others similarly situated

against the above-named Defendants[1] and, demanding a trial by jury, complains and alleges as follows:

## JURISDICTION AND DAMAGES

1.      Plaintiff brings this Complaint pursuant to under Section 16 of the Clayton Act, 15 U.S.C. § 26, to obtain injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. §1, under Kansas Statutes Annotated § 50-101, § 50-108, § 50-112, § 50-132, § 50-115, § 50-117, and § 50-161, and under state unjust-enrichment laws  to recover damages and other equitable relief for injuries which Plaintiff and all other similarly situated have sustained due to the violations by Defendants named herein of these statutes, including costs of the suit and reasonable attorneys' fees.

2.      The Court has jurisdiction over the federal claim under 28 U.S.C. §§1331 and 1337.  The Court has jurisdiction over the state-law claims under 28 U.S.C. §1367 because those claims are so related to the federal claim that they form part of the same case or controversy.  The Court also has jurisdiction over the state-law claims under 28 U.S.C §1332 because the amount of the controversy for the Money-Damages class defined below exceeds $5,000,000, and Plaintiff and members of the Money-Damages class are citizens of a different state than the Defendants.  In the event that this action is transferred by orders of the Judicial Panel on Multidistrict Litigation, Plaintiff does not waive his right to have his and the claims of all others similarly situated remanded to the District of Kansas, in accordance with Lexicon, Inc. v. Milberg, Weiss, Bershad, Hynes & Lerach, 523 U.S. 26 (1998).

---

[1] "Defendants" means each of the above-captioned Defendants who, individually, and collectively through their combination and conspiracy, perpetuated the illegal conduct complained of herein.

3.      Venue is proper in the District of Kansas pursuant to 15 U.S.C. 22 and 28 U.S.C. § 1391 (b) and (c).  One or more of the Defendants transacts business, or is found in the State of Kansas and the District of Kansas.  Many of the unlawful acts done pursuant to the arrangements, contracts, agreements, combination and conspiracy alleged herein, had a direct and substantial effect on Plaintiff in the State of Kansas and within the District of Kansas.  The interstate trade and commerce hereinafter described is carried on, in part, into, and within the State of Kansas and within the District of Kansas. Defendants, directly and through affiliates they dominate and control, performed unlawful acts in furtherance of their illegal arrangements, contracts, agreements, combination and conspiracy within the flow of interstate trade and commerce and within the United States and within the State of Kansas that were intended to have, and did have, a direct and substantial and reasonably foreseeable effect on Plaintiff in interstate trade and commerce and in the State of Kansas.

4.      The activities of the Defendants and their co-conspirators were within the flow of, were intended to, and did have a substantial effect and impact on the foreign and interstate commerce of the U.S. and on trade and commerce within the State of Kansas.

## DEFINITIONS

5.      As used in this Complaint, the term "TFT-LCD Products" means Thin Film Transistor Liquid Crystal Display products, including such products as are used in televisions, computer (both desktop and notebook) monitors, mobile phones, personal digital assistants ("PDA's") and other devices.

6.      As used in this Complaint, the term "Class Period" means the time period from at least January 1, 1998 through at least December 31, 2005.

**THE PARTIES**

7.    Plaintiff Kou Srimoungchanh is a Kansas resident who indirectly bought or purchased  TFT-LCD Products from one or more of the Defendants during the class period, for end use and not for resale.   Plaintiff was injured by Defendants' illegal conduct as set forth in this Complaint.

8.    Defendant LG Philips LCD Co., Ltd. ("LG Philips") is a Korean entity with its principal place of business located at 20 Yoido-dong, Youngdungpo-gu, Seoul 150-721, Republic of Korea.  LG Philips is a joint venture created in 1999 by Philips Electronics NV and LG LCD.  LG Philips maintains offices in San Jose, California.  In its Form 6-K filed on December 11, 2006 with the United States Securities and Exchange Comission ("SEC"), LG Philips stated that it "is a leading manufacturer and supplier of thin-film transistor liquid crystal display (TFT-LCD) panels"; that it "manufactures TFT-LCD panels in a wide range of sizes and specifications for use in TVs, monitors, notebook PCs, and various applications"; that it "currently operates seven fabrication facilities and four back-end assembly facilities in Korea, China and Poland." (http://www.lgphilips-lcd.com/homeContain/jsp/eng/inv/inv200_j_e.jsp).    During the Class Period, LG Philips manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

9.    Defendant LG Philips LCD America, Inc. is an entity organized under the laws of California with its principal place of business located at 150 East Brokaw Rd., San Jose, CA 94112.   During the Class Period, LG Philips LCD America, Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

10.    Defendant Samsung Electronics Co., Ltd. ("Samsung") is a business entity organized under the laws of South Korea, with its principal place of business at Samsung Main Building 250-2 ga, Taepyung-ro Chung-gu, Seoul, Korea.  During the Class Period, Samsung manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

11.    Defendant NEC Corporation is a business entity organized under the laws of Japan with its principal place of business located at 7-1, Shiba 5-chome, Minato-ku, Tokyo 108-8001 Japan.  During the Class Period, NEC Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

12.    Defendant NEC Electronics America, Inc. ("NEC") is a wholly owned and controlled subsidiary of NEC Electronics Corporation, with its principal place of business at 2880 Scott Boulevard, Santa Clara, California and its manufacturing plant in Roseville, California.  During the Class Period, NEC manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

13.    Defendant NEC LCD Technologies, Ltd. is a wholly owned and controlled subsidiary of Defendant NEC Corporation, and is an entity organized under the laws of Japan with its principal place of business located at 1753 Shimonumabe, Nakahara-Ku, Kawasaki, Kanagawa 211-8666, Japan.    During the Class Period, NEC LCD Technologies, Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

14.    Defendant Hitachi Ltd. is a business entity organized under the laws of Japan, with its principal place of business at 6-1 Marunouchi Center Building 13F Chiyoda-ku, Tokyo, 100-8220, Japan.    During the Class Period, Hitachi Ltd.

manufactured, sold and distributed TFT-LCD Products to Customers throughout the United States.

15.     Defendant Hitachi Displays, Ltd. is a business entity organized under the laws of Japan, with its principal place of business located at AKS Bldg. 5F, 6-2 Kanda Neribei-cho 3, Chiyoda-ku, Tokyo, 101-0022, Japan.  On its website, Hitachi Displays, Ltd. states that "[w]e provide the world's best products, quality and service to meet the needs of the digital age.  These include Hitachi's proprietary Advanced-Super IPS LCDs offering clear pictures from any angle; large-sized LCD modules for TVs using our original moving picture technology; small-sized LCD modules for information terminal devices such as cellular phones and digital cameras with low power consumption and high resolution picture realized by LTPS (low-temperature polysilicon) technology; and middle-sized colorful LCD modules for amusement devices.   We also produce components such as LCD drivers, color filters and back-lights."  (http://www.hitachi-displays.com/en/company/work/index.html).  During the Class Period, Hitachi Displays, Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

16.     Defendant Hitachi America Ltd. is a wholly owned and controlled subsidiary of defendant Hitachi Ltd.  Hitachi America Ltd. is a business entity organized under the laws of New York, with its principal place of business at 50 Prospect Avenue, Tarrytown, New York, 10591.   During the Class Period, Hitachi America Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

17.     Defendant Hitachi Electronic Devices (USA), Inc. is a wholly owned and controlled subsidiary of Defendant Hitachi Ltd., and is a business entity with its principal place of business located at 575 Mauldin Road, Greenville, South Carolina 29607. During the Class Period, Hitachi Electronic Devices (USA), Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States. Defendant Hitachi Electronic Devices (USA), Inc. is a wholly owned and controlled subsidiary of Defendant Hitachi Ltd., and is a business entity with its principal place of business located at 575 Mauldin Road, Greenville, South Carolina 29607.  During the Class Period, Hitachi Electronic Devices (USA), Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

18.     Defendants Hitachi Ltd., Hitachi Displays, Ltd., Hitachi America Ltd. and Hitachi Electronic Devices (USA), Inc. are referred to collectively herein as Hitachi.

19.     Defendant IDT International Ltd. is an entity organized under the laws of Bermuda with its principal place of business located at Block E, 9th Floor, Kaiser Estate Phase 1, 41 Man Yue Street, Hunghom, Kowloon, Hong Kong.  During the Class Period, IDT International Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

20.     Defendant International Display Technology Co., Ltd. is an entity organized under the laws of Japan with its principal place of business located at Nansei Yaesu Bldg. 3F, 2-2-10 Yaesu, Chuo-Ku, Tokyo 104-0028, Japan.  Defendant International Display Technology Co., Ltd. is a subsidiary of Defendant Chi Mei Optoelectronics Corporation.  During the time period covered by this Complaint,

Defendant International Display Technology Co., Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

21.    Defendant International Display Technology USA Inc. is a corporation with its principal place of business located at 101 Metro Drive, Suite 510, San Jose, California.  Defendant International Technology USA Inc. is a subsidiary of Defendant Chi Mei Optoelectronics Corporation.  During the time period covered by this Complaint, Defendant International Display Technology USA Inc. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

22.    Defendant Sanyo Epson Imaging Devices Corporation ("Sanyo Epson") is "a joint venture of Seiko Epson Corporation and Sanyo Electric Co., Ltd., started operations on October 1, 2004.  It combines the liquid crystal display operations of Epson, Sanyo Electric, and Sanyo Group companies Tottori Sanyo Electric Co., Ltd. and Sanyo LCD Engineering Co., Ltd. and mobilizes each company's special fields of miniaturization, high resolution, high definition, and volume production technology." (http://www.sanyo-epson.com/e/company/outline/index.html>).    Defendant Sanyo Epson's principal place of business is located at World Trade Center Building 15F, 2-4-1 Hamamatsu-cho, Minato-ku, Tokyo, Japan.  During the Class Period, Sanyo Epson manufactured, sold and distributed TFT-LCD Products to customers through the United States.

23.    Defendant Sharp Corporation is a business entity organized under the laws of Japan, with its principal place of business at 22-22 Nagaike-cho, Abeno-ku, Osaka 545-8522, Japan.  During the Class Period, Sharp Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

24.    Defendant Sharp Electronics Corporation is a wholly owned and controlled subsidiary of Sharp Corporation, with its principal place of business at Sharp Plaza, Mahwah, New Jersey, 07430.  During the Class Period, Sharp Electronics Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States. Sharp Corporation and Sharp Electronics Corporation are referred to collectively herein as "Sharp."

25.    Defendant Toshiba Corporation is a business entity organized under the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan.  During the Class Period, Toshiba Corporation manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

26.    Defendant Toshiba Matsushita Display Technology Co., Ltd. is a business entity organized under the laws of Japan with its principal place of business located at Rivage Shinagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo 108-0075, Japan.  Defendant Toshiba Corporation states on its website the following regarding Toshiba Matsushita Technology Co., Ltd.:  "[a]dvanced capabilities in LCD and organic LED displays drive product development and production and enhanced sales operations with a truly worldwide reach.  The company is the undisputed leader in low temperature polysilicon TFT technology, the preferred display for mobile devices and the underpinning technology for organic LED, the next generation display-of-choice for a range of products, including thin profile televisions.  These leading-edge capabilities support us in providing high value added displays that are light and thin, consume little power and offer                  excellent                  image                  quality." (http://www.toshiba.co.jp/worldwide/about/company/tmd.html).    During    the    Class

Period, Toshiba Matsushita Display Technology Co., Ltd. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

27.     Toshiba Corporation and Toshiba Matsushita Display Technology Co., Ltd. are referred to collectively herein as "Toshiba."

28.     Defendant AU Optronics Corp. is Taiwan's largest manufacturer of TFT-LCD Products and has its corporate headquarters at No. 1, Li-Hsin Rd. 2, Hsinchu Science Park, Hsinchu 30078, Taiwan, R.O.C.  During the Class Period, AU Optronics Corp. manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

29.     Defendant AU Optronics Corporation America ("AUOCA") is a wholly owned and controlled subsidiary of Defendant AU Optronics and has its corporate headquarters at 9720 Cypresswood Drive, Suite 241, Houston, Texas.  AUOCA has a facility located in San Diego, California.  During the Class Period, AUOCA manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

30.     Defendant Chi Mei Optoelectronics ("Chi Mei") is a leading manufacturer of TFT-LCD Products and has its global headquarters at No. 3, Sec. 1, Huanshi Rd., Southern Taiwan Science Park, Sinshih Township, Tainan County, 74147 Taiwan R.O.C. During the Class Period, Chi Mei manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

31.     Defendant Chi Mei Optoelectronics USA, Inc. is a wholly owned and controlled subsidiary of Chi Mei and has its corporate headquarters at 101 Metro Drive, Suite 510, San Jose, California.  During the Class Period, Chi Mei Optoelectronics USA,

Inc. manufactured, sold and distributed TFT-LCD Products to customers through the United States.

32.     Defendant Chunghwa Picture Tubes Ltd. ("Chunghwa") is a leading manufacturer of TFT-LCD Products and has its global headquarters at 1127 Hopin Rd., Padeh City, Taoyuan, Taiwan, R.O.C.    During the Class Period, Chunghwa manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

33.     Defendant HannStar Display Corporation ("HannStar") is a leading manufacturer of TFT-LCD Products and has its headquarters at No. 480, Rueiguang Road, 12th Floor, Neihu Chiu, Taipei 114, Taiwan, R.O.C.    During the Class Period, HannStar manufactured, sold and distributed TFT-LCD Products to customers throughout the United States.

34.     The unlawful activities of the alleged illegal arrangements, contracts, agreements, combination and conspiracy set forth in this Complaint have been committed by Defendants and were ordered and performed by their officers, directors, agents, employees, or representatives, while actively engaged in the management, direction, control or transaction of Defendants' business or affairs.    Various other persons, entities, companies and corporations not named as Defendants, including some whose identities are presently unknown, participated as co-conspirators with Defendants in the violations alleged herein, and have made statements and performed acts in furtherance of those violations in the United States and elsewhere that had a direct, substantial, and reasonably foreseeable effect on United States commerce, including commerce in the State of Kansas.    The actions of Defendants and these co-conspirators significantly, substantially,

and adversely affected commerce relating to sales of TFT-LCD Products within the State of Kansas.

## FRAUDULENT, ACTIVE, AND SELF-CONCEALMENT

35.     Throughout and beyond the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff. Defendants and their co-conspirators conducted their conspiracy, which by its nature is self-concealing, in secret and kept it within the confines of their higher-level executives. Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases.  Defendants and their co-conspirators concealed the true nature of their unlawful conduct and acts in furtherance of it, and actively concealed their activities through various other means and methods to avoid detection.  Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws until shortly before commencing this litigation.

36.     At all relevant times, Defendants and their co-conspirators affirmatively concealed the existence of their illegal arrangements, contracts, agreements, combination and conspiracy and thereby tolled the statute of limitations.  Plaintiff did not discover and could not have discovered Defendants' unlawful conduct at an earlier date by the exercise of due diligence because Defendants and their co-conspirators affirmatively and fraudulently concealed the existence of their arrangements, contracts, agreements, combination and conspiracy from Plaintiff by various acts, including the following:

>              (a)     Defendants and their co-conspirators conducted private, secret telephone conversations, e-mails, and discussions worldwide in

order to confine knowledge of their unlawful arrangements, contracts, agreements, combination and conspiracy to a discrete group of individuals;

(b)    Defendants and their co-conspirators secretly coordinated the day-to-day conduct of the conspiracy; and

(c)    Defendants' executives routinely and consistently destroyed records and notes of their unlawful telephone conversations, e-mails, discussions, and agreements to conceal their illegal conduct.

37.    As a result of Defendants and their co-conspirators' active concealment, any and all applicable statutes of limitations otherwise applicable to Plaintiff's allegations have been tolled.

## CLASS ACTION ALLEGATIONS

38.    Plaintiff  brings this suit as a class action pursuant to Rules 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of himself and the following class members composed of and defined as follows:

### INJUNCTIVE-RELIEF CLASS

All persons and business entities residing in the State of Kansas that indirectly purchased TFT-LCD Products in the State of Kansas from the Defendants or their co-conspirators or any predecessor, subsidiary, or affiliate of each, for their own use and not for resale, from January 1, 1998 through December 31, 2005.

Excluded from the Injunctive-Relief Class are the Defendants; the officers, directors or employees of any defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.   Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and members of his/her immediate family and judicial staff, and any juror assigned to this action.

Plaintiff also brings this class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of himself and the following class members:

### MONEY-DAMAGES CLASS

All persons and business entities residing in the State of Kansas that indirectly purchased TFT-LCD Products in the State of Kansas from the Defendants or their co-conspirators or any predecessor, subsidiary, or affiliate of each, for their own use and not for resale, from January 1, 1998 through December 31, 2005.

Excluded from the Injunctive-Relief Class are the Defendants; the officers, directors or employees of any defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant.   Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and members of his/her immediate family and judicial staff, and any juror assigned to this action.

39.    Plaintiff has met the requirements of Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure.

40.    Plaintiff does not know the exact size of the classes, since this information is in Defendants' exclusive control.  But based on the nature of the trade and commerce involved, Plaintiff believes that each class numbers at least in the hundreds and that the members of each class are geographically dispersed throughout the State of Kansas (Money-Damages Class), or alternatively, throughout the U.S. including in Kansas (Injunctive-Relief Class).  Therefore, joinder of the members of each class would be impracticable, and class treatment is the superior method for fairly and efficiently adjudicating this controversy.

41.    Plaintiff's claims within the respective classes are typical of other class members' claims because all class members were injured through the uniform misconduct described and paid supra-competitive prices for TFT-LCD Products without

being informed that they were paying illegal and improper prices. Accordingly, by proving his own claims, Plaintiff will presumptively prove the respective class members' claims.

42.    Common legal and factual questions among and within the respective classes exist, such as:

a.    Whether Defendants conspired to fix, raise, maintain, or stabilize the prices of TFT-LCD Products marketed, distributed, and sold in the U.S., including in the State of Kansas;

b.    Whether Defendants conspired to manipulate and allocate the market for TFT-LCD Products marketed, distributed, and sold in the U.S. including in the State of Kansas;

c.    The existence and duration of Defendants' horizontal agreements to fix, raise, maintain, or stabilize the prices of TFT-LCD Products marketed, distributed, and sold in the U.S., including in the State of Kansas;

d.    The existence and duration of Defendants' horizontal agreements to manipulate and allocate the market for TFT-LCD Products marketed, distributed, and sold in the U.S., including in the State of Kansas;

e.    Whether each Defendant was a member of, or participated in, the arrangement, contract, or agreement to fix, raise, maintain, or stabilize the prices of TFT-LCD Products marketed, distributed, and sold in the U.S., including in the State of Kansas;

f.    Whether each Defendant was a member of, or participated in, the arrangement, contract, or agreement to allocate the market for TFT-LCD Products marketed, distributed, and sold in the U.S., including in the State of Kansas;

g.    Whether Defendants' conspiracy was implemented;

h.    Whether Defendants took steps to conceal their conspiracy from Plaintiff and the members of each class;

i.    Whether Defendants' conduct caused injury in fact to the business or property of Plaintiff and the respective class members, and if so, the appropriate class-wide measure of damages;

j.      Whether the agents, officers, or employees of Defendants and their co-conspirators participated in telephone calls, meetings, and other communications in furtherance of their conspiracy; and

k.      Whether the purpose and effect of the acts and omissions alleged was to fix, raise, maintain, or stabilize the prices of TFT-LCD Products marketed, distributed, and sold in the U.S., including in the State of Kansas, and to manipulate and allocate the market for TFT-LCD Products marketed, distributed, and sold in the U.S., including in the State of Kansas.

43.     Plaintiff can and will fairly and adequately represent and protect the respective class members' interests and have no interests that conflict with or are antagonistic to the class members' interests.  Plaintiff's attorneys are experienced and competent in complex class-action and consumer-antitrust litigation.

44.     Class certification of the respective classes is appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure because a class action is the superior procedural vehicle for the fair and efficient adjudication of the claims asserted given that:

a.      Common questions of law and fact overwhelmingly predominate over any individual questions that may arise among or within the respective classes and, consequently, enormous economies to the court and parties exist in litigating the common issues, for each class, on a classwide basis instead of on a repetitive individual basis;

b.      Each individual class member's damage claim is too small to make individual litigation an economically viable alternative, and few class members have any interest in individually controlling the prosecution of separate actions;

c.      Class treatment is required for optimal deterrence against, and compensation for, Defendants' wrongful conduct alleged herein; and

d.      Despite the relatively small size of each individual class member's claim, the aggregate volume of their claims, whether considered in a national class or in a Kansas class, coupled with the economies of scale inherent in litigating similar claims on a common basis,

will enable this case to be litigated as a class action on a cost-effective basis, especially when compared with repetitive individual litigation, and no unusual difficulties are likely to be encountered in this class action's management in that all legal and factual questions are common to each class.

45.    Plaintiff's claims within and among the respective classes are typical of the associated class members' claims because Defendants injured Plaintiff and the respective class members in the same manner (*i.e.,* Plaintiff and the respective class members were forced to pay supra-competitive prices for TFT-LCD Products).

46.    Class certification is appropriate pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure because prosecution of separate actions would create a risk of adjudication with respect to individual members of the respective classes, which may, as a practical matter, dispose of other class members' interests who aren't parties to the adjudication or which may substantially impair or impede individual class members' ability to protect their interests.  Separate actions prosecuted by individual class members would also create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants.

47.    Class certification, whether as a national class or Kansas class, is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendants have acted on grounds generally applicable to the respective class members.

48.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole; and .

49.    In the absence of a class action, Defendants would be unjustly enriched because they would be able to retain the benefits and fruits of their wrongful conduct.

## TRADE AND COMMERCE

50. Throughout the Class Period, Defendants and their co-conspirators engaged in the business of marketing and selling TFT-LCD Products throughout the United States.

51. As Defendant LG Philips states on its website, "the thin-film transistor liquid crystal display ("TFT-LCD") is a cutting-edge display, which screens picture information by adjusting the amount of light permitted."    (http://www.lgphilips-lcd.com/homeContain/jsp/eng/tech/tech210_j_e.jsp).  LG Philips further states that "TFT is a circuit formed with semiconductor films on a thin glass substrate to control liquid crystals. . . .  This circuit plays a vital role in controlling each pixel, the basic unit of a picture image.  The color filter displays a color image by coating the pixel (red, green and blue) on a glass substrate."  Id.

52. At the portion of its website entitled "How TFT-LCD Works" Defendant LG Philips explains:

> A pixel, the smallest unit to indicate a picture image, is formed by three sub-pixels consisting of red, green, and blue.  The number of pixels arranged in a display determines the resolution of the TFT-LCD.  TFT is composed of the data line (image signal transfer) and gate line (TFT on/off signal transfer). TFT existing in each sub-pixel controls the voltage difference between the TFT glass electrode and the color filter glass electrode in order to adjust the molecular array of liquid crystals.  Such a change in the molecule direction of liquid crystals alter the amount of light penetrating the liquid crystal layer. Consequently, the TFT-LCD display shows picture image information.

(<http://www.lgphilips-lcd.com/homeContain/jsp/eng/tech/tech210_01_j_e.jsp>)

53. The company describes some of the applications for TFT-LCD technology as follows:

> TFT-LCD technology has created a wide range of computer and consumer products that would have not been possible with cathode-ray tubes (CRT).  The

flat and thin attributes of LCDs makes them ideal for mobile or portable applications. In addition, LCDs can operate at low voltage levels and dissipate with low heat exposure. Initially, LCDs were incorporated into notebook computers, similar in size and resolution to 12-14 inch CRT monitors. Through innovation, TFT-LCD engineers were able to develop displays providing much higher resolution than CRTs, in addition to producing them in larger sizes. Today, TFT-LCDs are challenging CRT-based desktop computer monitors. As a result, a wider range of mobile computing applications is now available. Engineers have found ways to reduce weight, thickness, and the frame width of notebook computer displays. New TFT process technologies make it possible to deliver more pixels per inch and allow even portable computers to display more information than the latest CRT monitor. Such technology became available just as DVDs became popular, so consumers can now get DVD players in very thin and light packages. Currently, a similar transformation is occurring with next-generation cell phones and wireless networks.

(http://www.lgphilips-lcd.com/homeContain/jsp/eng/tech/tech210_02_j_e.jsp>).

54.    The market for TFT-LCD Products is huge. An October 10, 2006 article stated that "[m]anufacturers are expected to pump out 48.4 million LCDs for TVs this year alone, up 70 percent over 2005, while flat-panel sales – most of those using LCD technology – are expected to reach $US 88 billion this year and $US 100 billion in 2007, according to market research company DisplaySearch." (http://www.theage.com.au/news/home-theatre/they-are-building-it-but-will-lcd-sales-come/2006/10/09/1160246068541.html#)

55.    The market for the manufacture and sale of TFT-LCD Products is also conducive to the type of collusive activity alleged here. That market is oligopolistic in nature. According to data from iSuppli, in 22005, LG Philips had 21.4% of the large TFT-LCD panel global market share, Samsung had 20.9%, AU Optronics had 14.5%, Chi Mei had 11.8%, and Chunghwa had 7.3%, while the remaining suppliers controlled 24.1%.

(http://www.eetimes.com/showArticle.jhtml?articleID=177101936).  Samsung took over

the leading position in the industry in 2006.

(http://biz.yahoo.com/rb/061211/lgphilips_investigation.html?.v=2>).

56.    Some of these companies are known antitrust violators.  Samsung, for

example, was fined $300 million by the United States Department of Justice ("DOJ")  in

October of 2005 for participating in a conspiracy to fix prices for Dynamic Random

Access Memory.  It is also under investigation by the DOJ (along with some of the other

Defendants) for fixing prices of Static Random Access Memory.

57.    The industry is also marked by a web of cross-licensing agreements that

facilitate collusion.  AU Optronics, for example, entered into licensing arrangements with

Sharp in 2005 and Samsung in 2006.  Chi Mei has licensing arrangements with Sharp,

AU Optronics, Chunghwa, HannStar and Hitachi.

58.    The market for the manufacture and sale of TFT-LCD Products is subject

to high manufacturing and technological barriers to entry, some of which are described in

Samsung's own November 3, 2005 "Market Perspective & Strategy" presentation

available                            at                            its                            website.

(http://www.samsung.com/AbouotSAMSUNG/ELECTRONICSGLOBAL/InvestorRelati

ons/IREventsPresentations/AnalystDay/index.html).  Efficient fabrication plants are large

and costly.  TFT-LCD Products are also subject to technological advances, so that firms

within the industry must undertake significant research and development expenses.

59.    The TFT-LCD Products industry has also been subject to significant

consolidation during the Class Period, as reflected in AU Optronics' recent acquisition of

Quanta Display, the creation in 2001 of AU Optronics itself through the merger of Acer

Display and Unipac Optoelectronics, or Fujitsu Limited's transfer of its LCD business to Sharp in 2005.

60.    Defendants sell their TFT-LCD Products through various channels including to manufacturers of electronic products and devices, and to resellers of TFT-LCD Products.  These electronic products and devices and TFT-LCD Products are then sold, directly or indirectly, to consumers and are not altered during the course of the sale.

61.    Defendants engaged in a continuing agreement to create or carry out restrictions in the production, supply, and sale of TFT-LCD Products and to increase the prices of TFT-LCD Products throughout the United States.  Defendants engaged in continuing illegal arrangements, contracts, agreements, combination and conspiracy to prevent full and free competition in the sale of TFT-LCD Products throughout the United States and in the State of Kansas.  The anticompetitive purpose and effect of Defendants' illegal arrangements, contracts, agreement, and combination and conspiracy was to artificially inflate the prices that Plaintiff paid for TFT-LCD Products throughout the United States and in the State of Kansas during the class period.

62.    The prices of TFT-LCD Products during the class period have increased in the United States, including the State of Kansas, for indirect purchasers as a result of Defendants' illegal arrangements, contracts, agreements, combination and conspiracy. The direct purchasers of TFT-LCD Products pass on to indirect purchasers in the United States and to Plaintiff in the State of Kansas, the artificially inflated prices that they paid to the Defendants.

63.    Defendants illegal conduct was intended to have, and did have a direct, substantial, and reasonably foreseeable effect upon business and commerce in the United

States and in the State of Kansas.  In particular, as a reasonably foreseeable result of Defendants' unlawful arrangements, contracts, agreements, combination and conspiracy, prices paid by Plaintiff for TFT-LCD Products in the State of Kansas were artificially inflated.

**COUNT I**
**(Applicable to the Injunctive-Relief Class)**
**VIOLATION OF THE CLAYTON ACT**

64.     Plaintiff repeats and re-alleges paragraphs 1 through 63.

65.     During the Class Period, Defendants entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize TFT-LCD Products prices in the U.S., including in the State of Kansas, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

66.     In formulating and carrying out their illegal agreement, understanding, and conspiracy, Defendants did the following things, among others:

   a.     Fixed, raised, maintained, and stabilized prices of TFT-LCD Products;

   b.     Allocated TFT-LCD Products' markets among themselves;

   c.     Rigged bids for the award and performance of TFT-LCT Products' contracts; and

   d.     Allocated TFT-LCD Products' production.

67.     Defendants' combination and conspiracy had the following effects, among others:

   a.     Price competition in the sale of TFT-LCD Products was restrained, suppressed, or eliminated in the U.S., including in the State of Kansas;

   b.     Prices for TFT-LCD Products sold by Defendants were fixed, raised, maintained, and stabilized at artificially high, non-

competitive levels throughout the U.S., including in the State of Kansas; and

c.    People and business entities that purchased TFT-LCD Products directly or indirectly from Defendants have been deprived of the benefits of free and open competition.

68.    TFT-LCD Products are necessary to make electronic products work – products which are now used, and which will at all relevant times in the foreseeable future continue to be used, by Plaintiff and members of the Injunctive-Relief class. Plaintiff and Injunctive-Relief class members have been injured and will continue to be injured in their business and property by having paid more, and/or by continuing to pay more, for TFT-LCD Products purchased indirectly from one or more of the Defendants than they would have paid absent Defendants' conspiracy, including paying more for TFT-LCD Products-containing products.

69.    As a proximate cause of Defendants' conspiracy, Plaintiff is entitled to an injunction against Defendants preventing and restraining Defendants' violations.

## COUNT II
### (Applicable to the Money-Damages Class)
### VIOLATION OF KANSAS LAW

70.    Plaintiff repeats and re-alleges paragraphs 1 – 63.

71.    Beginning at least as early as January 1, 1998 and continuing thereafter to the December 31, 2005, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators entered into and engaged in illegal  arrangements, contracts, agreements, and entered into a combination and conspiracy in restraint of trade and commerce as alleged herein.  These illegal arrangements, contracts, agreements, combination and conspiracy were with a view and tended to prevent full and free competition in the sale of TFT-LCD Products in the United States and in the State of Kansas in violation of the

provisions of Chapter 50, Article 1 – The Kansas Restraint of Trade Act, Kansas Statutes Annotated § 50-101, § 50-108, and § 50-112.

72.     The Defendants' combination and conspiracy alleged herein consisted of a continuing agreement, understanding and concert of action among the Defendants and their co-conspirators, the substantial terms of which included, but were not limited to, the following:

> (a)     Participating in meetings and conversations worldwide and in the United States to discuss the prices and control the supply of TFT-LCD Products sold in the United States and elsewhere;
>
> (b)     Agreeing, during those meetings and conversations, to charge prices and to set exports at certain levels for TFT-LCD Products sold in the United States and elsewhere;
>
> (c)     Agreeing in advance on production and export volumes of TFT-LCD Products in order to stabilize and increase prices of TFT-LCD Products in the United States and elsewhere;
>
> (d)     Discussing and exchanging prices of TFT-LCD Products in order not to undercut the prices of their competitors;
>
> (e)     Allocating customers and markets for sales of TFT-LCD Products;
>
> (f)     To affirmatively conceal the existence of their illegal understanding, agreement, combination and conspiracy.

73.     Defendants' conspiracy has substantially affected and impacted trade and commerce within the State of Kansas during the Class Period.

74.     During the Class Period, Kansans indirectly purchased millions of dollars

TFT-LCD Products in the State of Kansas from Defendants.  By reason of Defendants' violations of Chapter 50, Unfair Trade and Consumer Protection, Article I – The Kansas Restraint of Trade Act, Kansas Statutes Annotated § 50-101 *et seq.*, Plaintiff and the Kansas class members paid significantly more for products containing TFT-LCD Products than they would have paid absent Defendants' illegal combination and conspiracy, and, as a result, Plaintiff and the Kansas class members were injured in their business and property and suffered damages in amounts presently undetermined.

## COUNT III
**(Applicable to the Money-Damages Class)**
**UNJUST ENRICHMENT**

75.    Plaintiff repeats and re-alleges paragraphs 1 through 63.

76.    As the result of Defendants' illegal agreement, contract, combination, and conspiracy, Plaintiff and the Kansas class members conferred a benefit upon Defendants, and Defendants received and retained this benefit under such circumstances that it would be inequitable and unconscionable to permit Defendants to retain this benefit without paying its reasonable value to Plaintiff and the class members.

77.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and Kansas class members suffered injury and seek an order directing Defendants to return to them the amount each of them improperly paid to Defendants, plus interest.

## JURY DEMAND

78.    Plaintiff demands trial by jury on all triable issues.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter judgment in the respective

class members' favor and against Defendants, as follows:

A.    That this Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure and certify either or both classes;

B.    With respect to the Injunctive-Relief Class, that this Court rule that Defendants' conspiracy violated the Sherman Act and that injunctive relief under the Clayton Act is appropriate;

C.    With respect to the Money-Damages Class, that this Court rule that Defendants' conspiracy violated Kansas law and that compensatory damages, including full consideration damages under Kansas Statutes Annotated § 50-115 and except to the extent that a double recovery would be produced, are appropriate;

D.    With respect to the Money-Damages Class, that this Court determine that Defendants were unjustly enriched;

E.    That this Court permanently enjoin Defendants from conspiring to fix the prices of TFT-LCD Products and allocating markets for TFT-LCD Products or other injunctive relief as this Court deems appropriate;

F.    That this Court award Plaintiff post-judgment interest, his costs, and reasonable attorneys' fees; and

G.    That this Court order such other and further relief as it may deem just and proper.

Dated:  March 7, 2007                    Respectfully submitted,


                                         By:    s/ Tom Brill_____


                                                Thomas H. Brill, Esq.      KS# 0883
                                                **Law Office of Thomas H. Brill**
                                                6552 Sagamore Road
                                                Mission Hills, Kansas 66208
                                                Telephone:    (913) 677-2004
                                                Facsimile:    (913) 677-2152
                                                E-mail:       brillkc@aol.com

Isaac L. Diel, Esq. KS# 14376
**SHARP McQUEEN, P.A.**
Financial Plaza
6900 College Boulevard, Suite 285
Overland Park, KS  66211
Telephone:    (913) 661-9931
Facsimile:    (913) 661-9935
E-mail:        dslawkc@aol.com

Daniel R. Karon, Esq.
**GOLDMAN SCARLATO & KARON, P.C.**
55 Public Square, Suite 1500
Cleveland, OH  44113
Telephone:    (216) 622-1851
Facsimile:    (216) 622-1852
E-mail:        karon@gsk-law.com

Krishna B. Narine, Esq.
**LAW  OFFICES  OF  KRISHNA  B. NARINE**
7893 Montgomery Avenue, Suite 300
Elkins Park, PA 19027
Telephone:    (215) 782-3240
Facsimile:    (215) 782-3241
E-mail:        knarine@kbnlaw.com

Gordon Ball, Esq.
**BALL & SCOTT**
Suite 750, Bank of America Center
550 Main Street
Knoxville, TN  37902
Telephone:    (865) 525-7028
Facsimile:    (865) 525-4679
E-mail:        gball@ballandscott.com

Kansas City, KS designated as place of trial.